[No. 25542. Department Two. September 30, 1935.]

ALBERT BAUMANN *et al., Respondents and Cross-appellants,* v. PUGET SOUND TITLE INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 49 P. (2d) 914.

*Bogle, Bogle & Gates* and *Ray Dumett*, for appellant.

*Lloyd B. Dysart*, for respondents and cross-appellants.

BLAKE, J.—On December 4th, 1930, plaintiffs loaned one thousand dollars to one Aust, who, on the same day, executed and delivered to them his promissory note, secured by a mortgage on real property in Lewis county. The mortgage contained a covenant that the property was "free from all incumbrances." Under the same date, the defendant issued a title insurance policy by which it insured plaintiffs against loss or damage, not exceeding one thousand dollars, by reason of any incumbrance on the property impairing the security of their mortgage, except as "noted in annexed Schedule B." At that time, there was an outstanding mortgage on the property, in the amount of $3,500, held by one Good. This mortgage was not mentioned in "Schedule B," or elsewhere in the title insurance policy. In other words, the mortgage given by Aust to plaintiffs purported to be a first mortgage and was insured as such by defendant.

*Good* brought an action to foreclose his mortgage, making the Baumanns parties defendant. They tendered defense of the action to defendant herein. The

latter declining to defend, the Baumanns appeared in that action and sought foreclosure of their own mortgage. In so doing, they incurred expenses amounting to $107.40. Judgment in that case resulted in foreclosure of the Good mortgage as a prior lien and the Baumann mortgage as a second.

The Baumanns then instituted this action on the title insurance policy for $1,107.40. The defendant answered, setting up, by way of cross-complaint, mutual mistake, and prayed for reformation of the policy so as to show the Good mortgage as an exception under "Schedule B." The court entered judgment for the plaintiffs in the amount of one thousand dollars. Both parties appeal.

*Defendant's Appeal.*

Defendant's claim of mutual mistake arises out of a so-called "title report," directed to Baumann prior to the consummation of the loan, in which the Good mortgage was shown and under the terms of which defendant agreed to insure the mortgage to Baumann *subject* to the Good mortgage. Defendant's position is that Baumann, acting with knowledge of the contents of the "title report," was bound by its terms; that he consummated the loan in reliance on the "title report," and not in reliance on the policy. On the legal soundness of this contention, we are not called upon to pass. It is not, in our opinion, supported by the facts.

Although the "title report" was directed to Baumann, it was procured by Aust. Baumann had no dealing whatever with defendant in respect to procuring it. It was made at the request of Aust and delivered to him—not to Baumann. Baumann had asked Aust for an abstract. Aust, however, persuaded him that a title policy was better than an abstract. Aust testified

that he not only showed the "title report" to Baumann but told him of the existence of the Good mortgage. Baumann denied all this and testified that, in all his negotiations with Aust, it was represented that he was to get a first mortgage. And that was the purport of the mortgage he got.

We have read the testimony of both men and are convinced, as was the trial court, that Baumann told the truth. There was no mistake or inequitable conduct on his part. By fortuitous circumstance, the defendant insured his mortgage for what it purported to be and for what he had been led to believe it was— a first mortgage. Under these facts, defendant cannot escape its obligation under the policy on the ground of mutual mistake.

*Plaintiffs' Appeal.*

■ The policy contained the following provisions:

"The total liability under this policy, exclusive of costs, shall in no case exceed the face of the policy."

"The Company will and shall have the right, at its own costs, to defend the Insured in all suits, actions or proceedings founded upon a claim of title, incumbrance or defect which existed or is claimed to have existed prior in date to this policy and not excepted herein."

Under similar clauses, where the insurer has failed to defend, this court has held it liable to the insured for expenses in a reasonable amount incurred by the latter in defense of the action. *Puget Sound Improvement Co. v. Frankfort etc. Ins. Co.,* 52 Wash. 124, 100 Pac. 190; *McKenna v. International Indemnity Co.,* 125 Wash. 28, 215 Pac. 66; *Pontious v. American Motorists' Ins. Co.,* 158 Wash. 264, 290 Pac. 850. Defendant does not seem to question the rule, but contends that plaintiffs are not entitled to recover such expenses in this action because (a) to attempt to defend the

Good foreclosure action was futile; (b) there is no evidence as to the reasonableness of the expenses incurred in defense of that action.

In the Good action, the Baumanns sought and obtained judgment foreclosing their own mortgage. This proved to be futile. But the futility appeared only upon sale of the property under execution. The property brought the amount of the Good judgment. Had it brought more than the amount of the Good judgment, the Baumann foreclosure would not have been a futility. We think the Baumanns were fully warranted in defending the Good action and in foreclosing their own mortgage.

The court allowed them one hundred dollars as attorneys' fees in the foreclosure of their mortgage. The decree in that case is in evidence in this. That is sufficient evidence of the reasonableness of the expenses incurred by the Baumanns in that action. *Clark v. Schwaegler*, 104 Wash. 12, 175 Pac. 300.

The judgment is affirmed on defendant's appeal and reversed on plaintiffs'. The cause is remanded, with directions to enter judgment accordingly.

MITCHELL, HOLCOMB, and STEINERT, JJ., concur.