[No. 32208. Department One. March 13, 1953.]

TRUCK INSURANCE EXCHANGE, *Respondent*, v. OTTO HANSON *et al., Appellants.*[1]

*Claude K. Irwin, J. D. McMannis,* and *Neill & Aitken,* for appellants.

*Hamblen, Gilbert & Brooke,* for respondent.

MALLERY, J.—Emil Hanson, sixteen years of age, arranged to purchase a pickup truck from Byron Cook. His father was required to cosign a note for the purchase price and a chattel mortgage to secure the payment thereof.

Cook, the seller, had a policy of public liability insurance on the truck at the time of the sale. The agent of the insurance company, learning of the sale, approached the father, while he was transacting business with a customer

[1] Reported in 254 P. (2d) 494.

in his tailor shop, and solicited the transfer of the Cook policy to the father, and assumed all of the facts pertinent to such a transfer. He knew his company would not write a policy on a truck owned by a minor.

The policy here in question is one of public liability insurance protecting the father against any judgment secured against him arising out of the ownership, maintenance, *or* use of the truck in question.

On July 9, 1950, Emil and his minor sister, Audrey, were in a serious accident near Pullman, Washington. Audrey was driving the truck. Joyce Marshall was severely injured. Joyce Marshall and her husband, Lloyd, commenced an action against Emil Hanson, his sister, and his father and mother. The defense of the action was tendered by the father to the plaintiff herein. It declined to assume the defense unless Emil Hanson and his father would sign a nonwaiver agreement under which it would retain the right to deny coverage under the policy.

Plaintiff then brought this action for a declaratory judgment to invalidate the policy upon the grounds of fraud.

The trial court found that the father did not intentionally misrepresent any fact, and hence, that no fraud was established. However, the trial court held the policy invalid upon the ground that the father did not have an insurable interest in the truck.

The defendants appeal, and assign that ruling as error.

The policy in question is not a policy of collision insurance on an automobile. Under its terms, no payments are to be made to the father by reason of any injury or damage to the truck. It is, therefore, immaterial whether he had a financial interest in it or not. The contingency against which the father is insured under the terms of the policy, is liability to third persons arising out of the ownership, maintenance, *or* use of the truck. It is axiomatic that anyone has a financial interest in protecting himself against liability arising out of the use of any instrumentality.

The rule is well stated in 6 Blashfield, Cyclopedia of Automobile Law & Practice (Perm. ed.) 537, § 3873, as follows:

"The rule requiring possession by the insured of an insurable interest in the property forming the subject matter of the insurance, which prevails generally in casualty insurance, is not applicable to liability indemnity policies.

"The character of the insurance is quite different from insurance, against injury or loss, of the property insured by fire, theft, collision, or the like, where the insured is required to have some real interest in the property insured; in the case of liability insurance the risk and hazard insured against is not the injury or loss of the property named in the policy, but against loss and injury caused by the use of the property therein named, for which the insured might be liable, and the right of the insured to recover does not depend upon his being the holder, in fact, of either a legal or equitable title or interest in the property, but whether he is primarily charged at law or in equity with an obligation for which he is liable."

In *Davis v. California Highway Indemnity Exchange,* 118 Cal. App. 403, 5 P. (2d) 447, the rule is stated in this manner:

"This was not a policy of insurance against loss of the automobile or injury thereto. The so-called policy was an indemnity contract against liability of the subscriber for damages on account of injuries resulting directly from 'the ownership, use or maintenance' of the described automobile; . . . It is our conclusion that the policy is not void for want of insurable interest in the automobile."

See, also, *Commonwealth Cas. Co. v. Arrigo,* 160 Md. 595, 154 Atl. 136, 77 A. L. R. 1250; *Pauli v. St. Paul Mercury Indemnity Co.,* 167 Misc. 417, 4 N. Y. S. (2d) 41; *Mid-State Ins. Co. v. Brandon,* 340 Ill. App. 470, 92 N. E. (2d) 540. A recent article appearing in 48 Columbia L. Rev. 1170, discussing insurable interest in liability insurance, states:

"If the occurrence of an insured event will cause an individual economic disadvantage in the form of legal liability, courts have tended to find an insurable interest in that happening. . . . In liability insurance, the coverage does not attach to the destruction of an insured physical property unit, but rather the policy amounts to an assurance that the insurance carrier will provide financial protection from personal liability which might accrue to the insured. *Thus in liability insurance, an individual has un-*

*limited insurable interest in his own personal liability."* (Italics ours.)

The trial court erred in ruling that the father had no insurable interest in the contingency described in the policy.

■■ The respondents contend that the trial court erred in finding that there was no fraud committed by the father in procuring the contract of insurance. It is permissible to do this without cross-appealing. *Trudeau v. Pacific States Box & Basket Co.*, 20 Wn. (2d) 561, 148 P. (2d) 453. The alleged misrepresentation upon which it relies appears in the policy application. It also appears in the policy declaration which was attached to and made a part of the policy. Both were prepared by respondent's agent.

Even if we attribute these misrepresentations to the father instead of the agent, they are still not grounds for avoiding the policy because of RCW 48.18.090 (1) [*cf.* Rem. Supp. 1947, § 45.18.09] which provides:

"Except as provided in subsection (2) of this section, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, *unless the misrepresentation or warranty is made with the intent to deceive."* (Italics ours.)

The trial court found there was no fraud. The record amply supports that finding, and does not support respondent's contention as to the existence of an *intent to deceive.*

We hold that the policy in question is valid.

The coverage of the policy is not before us. The trial of the tort action now pending between the appellants herein will develop the particular facts upon which such questions as liability and the coverage of the policy will be determined.

The judgment is reversed.

GRADY, C. J., HILL, WEAVER, and OLSON, JJ., concur.